UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| RICHARD BLAKE BONDS, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 4:08-CV-01948-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The plaintiff, Richard Blake Bonds, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and period of disability.  Mr. Bonds timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).[1]

---

[1] Plaintiff has also moved to remand this action to the Appeals Council under the belief that the Council did not have access to the entire record.  This belief was founded on the incomplete record initially filed with this Court.  Following Plaintiff's motion to

Mr. Bonds was thirty-seven years old at the time of the Administrative Law Judge's ("ALJ's") decision, and he has a high school education and possibly one year at Gadsden State College. (Tr. at 28.) His past work experiences include employment as a packaging machine operator, parts machine operator, line leader, and materials handler. (*Id.*) Mr. Bonds claims that he became disabled on September 2, 2004, due to back problems. (*Id.* at 28-29.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is

---

remand, the Commissioner supplemented the record with evidence that was "inadvertently omitted from the administrative record in this case which was certified on November 20, 2008." (Doc. 9.) It is evident to the Court that the Appeals Council had the necessary documentation before it when it made its unfavorable decision against Plaintiff.

Also, Plaintiff has submitted a decision issued on October 15, 2009, finding Plaintiff disabled as of February 22, 2008, because of the limitations reviewed in this opinion. This finding, however, does not relate to the time period under consideration here, and a showing of subsequent disability has no bearing on an earlier ruling. *See Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision.").

"doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 404.1520(e).

The fourth step requires a determination of whether the claimant's

impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Bonds meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 28.) He further determined that Mr. Bonds has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's chronic low back pain and depression are considered "severe" based on the requirements set forth in the regulations. (*Id.* at 36.) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

(*Id*.)  The ALJ did not find Mr. Bonds's allegations to be totally credible, and he determined that he has the following residual functional capacity: sedentary non-exertional work. (*Id*. at 41.)

According to the ALJ, Mr. Bonds is unable to perform any of his past relevant work, he is a "younger individual," and he has a high school education and an unskilled and semi-skilled background as those terms are defined by the regulations.  (*Id*.)  He determined that Plaintiff has "no transferable skills from any past relevant work." (*Id*.)  The ALJ found that Mr. Bonds has the residual functional capacity to perform a significant range of non-exertional sedentary work.  (*Id*.)  Even though Plaintiff cannot perform the full range of sedentary work, the ALJ used Medical-Vocation Rule 201.27 and 201.28 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing, such as surveillance system monitor, telephone quotation clerk, and optical polisher. (*Id*.)  The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from September 2, 2004 through the date of this decision." (*Id*.)

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's


decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

Mr. Bonds alleges that the ALJ's decision should be reversed and remanded for five reasons. First, he believes that the ALJ's finding that he has the capacity to perform sedentary work is not supported by substantial evidence. (Doc. 7 at 4.) Second, Plaintiff contends that the ALJ did not develop the Record. (*Id.*) Third, Plaintiff argues that the AlJ's finding that the Claimant is not credible is not supported by substantial evidence or sufficient reasons. (*Id.*) Fourth, Plaintiff maintains that he meets Listing 1.04A — Disorders of the Spine. (*Id.*) Finally, Plaintiff contends that the ALJ should have found him disabled under Listing 12.04 — Depression. (*Id.*)

A.   ALJ's Finding of Capacity to Perform Sedentary Work.

Plaintiff contends that the ALJ did not support his finding that the Plaintiff could perform sedentary work because he failed to present the vocational expert ("VE") with a hypothetical question that accurately stated his pain level and residual functioning capacity.  In assessing work ability, the burden is initially on the Plaintiff to demonstrate that his disability precludes him from engaging in past relevant work.  *Barnes v. Sullivan*, 932 F.2d 1356, 1359 (1991).  In the present matter, the ALJ found that Plaintiff could not return to his past relevant work as a machine operator, line leader, and materials handler.  (Tr. at 42.)  The burden then shifts to the ALJ to show substantial evidence that other work exists in the national economy which Plaintiff could perform.  *Jones v. Apfel*, 190 F.3d 1224, 1228-29 (11th Cir. 1999).

The testimony of the VE may constitute substantial evidence if it is in response to a hypothetical question posed by the ALJ that comprises all of the claimant's impairments.  *Apfel*, 190 F.3d at 1229.  However, an ALJ need only include a claimant's credible limitations.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).

The ALJ asked a series of questions to the VE in order to assess Plaintiff's disability. While the hypothetical began with the ALJ asking the VE to assume that the Plaintiff was "restricted to only occasional bending, stooping," the ALJ progressively narrowed his description of Plaintiff, eventually stating, "The jobs you've identified if the only limitation was the need to lie down and here's the limitation. That Mr. Bonds has to lie down let's see three-quarters of the day. If he's got to lie down three-quarters of a day and forgive me for somewhat answering the question I'm going to pose to you. If he's got to lie down for that period of the time then by definition he's not able to work." (Tr. at 446-50.) The VE responded, "That would be absolutely correct, Your Honor." *Id.* at 450. The ALJ also asked the VE to consider how moderate to severe pain or depression would limit Plaintiff's work activity. *Id.* at 450-51. As such, the ALJ's hypothetical's covered the gamut of Plaintiff's possible disabilities. Therefore, Plaintiff's cause is not due to be remanded for the ALJ's failure to propound a proper hypothetical.

B.   ALJ's Failure to Develop the Record.

Plaintiff also argues that the ALJ failed to properly develop the record

because he failed to request additional testing.  An ALJ does have a duty to develop a full and fair record.  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).  However, there must be a "showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded . . . for further development of the record."  *Graham v. Apfel*, 190 F.3d 1420, 1422-23 (11th Cir. 1997).  Furthermore, it is fundamentally the responsibility of the party seeking benefits to prove his disability, and therefore "he is responsible for producing evidence to support his claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Plaintiff's argument in the present case seems to rest solely on additional medical evidence submitted by Plaintiff to the Appeals Council that was not before the ALJ.  This evidence consists of medical reports made by various physicians from 2004 to 2007.  Plaintiff has not shown how the ALJ's failure to consider this information is prejudicial to Plaintiff.  First, the evidence itself was not presented to the ALJ for consideration, and he is not required to ferret out additional information that may benefit Plaintiff.   *See Ellison,* 355 F. 3d at 1276-77.  Furthermore, the ALJ

considered an extensive number of evaluations by the physicians that treated Plaintiff during the period between his onset of disability and the ALJ's decision. (Tr. at 28-40.) The additional evidence Plaintiff suggests the ALJ should have reviewed is consistent with that already before the ALJ. (*Compare id.* and Doc. 7 at 15, Doc. 7-2 at 1-5.) Therefore, Plaintiff's argument that the ALJ failed to properly develop the record is unavailing.

    C.    ALJ's Credibility Determination.

Plaintiff argues that the ALJ improperly evaluated his credibility, particularly regarding the intensity, persistence, and limiting effects of his alleged symptoms. Where a plaintiff attempts to establish a disability through his own testimony, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). In determining whether the pain standard is met, the credibility of the plaintiff's testimony must be considered. *Lamb*

*v. Bowen,* 847 F.2d 698, 702 (11th Cir. 1988).  If the ALJ does not credit the plaintiff's testimony, he must articulate explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).  The ALJ's credibility determination does not have to cite particular formulations; however, there cannot be a broad rejection that prevents this Court from concluding that the ALJ considered the entirety of the medical evidence. *Dyer*, 395 F.3d at 1210.  The regulations further direct that the ALJ will consider "all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating or nontreating source, and observations by our employees and other persons."  20 C.F.R. § 404.1529(c)(3).

In his analysis of Plaintiff's limitations, the ALJ determined that the medical evidence established his chronic low back pain and depression, such that Plaintiff faced some limitations on his work-related functions.  (Tr. at 42.)  But the objective medical evidence did not confirm Plaintiff's claims that his limitations resulted in complete disability.

Plaintiff's medical history is replete with medical opinions by various

examining physicians who questioned the disability of Plaintiff.  As early as October 2004, Dr. Moon, an examining physician, stated that was capable of returning to full work duty.  (Tr. at 214.)  Following Plainiff's surgery in January 2005, Dr. Jones, the treating surgeon, reported minimal scaring following surgery, only mild disc space narrowing, and no "focal disk extrusion or findings to suggest residual disc herniation.  (Tr. at 162.)  In December 2006, Dr. Rickless, an examining physician who performed a musculoskeletal examination on Plaintiff, found, "No deformities.  No tenderness. No spasms.  No limitations of motion."  (Tr. at 267.)  Dr. Rickless found that Plaintiff had 5/5 muscle strength.  (Tr. at 267-68.)

      The ALJ also noted that many of the physicians who had reviewed the Plaintiff found his reliability to be questionable.  The ALJ noted that in October 2004, Dr. White observed that there was "nothing to explain his bitter and severe complaints of pain."  (Tr. at 326.)  He further stated that Plaintiff even "complained bitterly of pain just from the needle stick and that sort of thing, much more so than the overwhelming majority of people . . . . There was nothing that I could really explain, so he seemed to have a fairly low pain threshold even with having a simple myelogram . . . . He

says over and over, 'I just can't work and do my job.'" *Id.* The ALJ also pointed to a psychological test performed by Dr. Ray in August 2005. Bonds described Plaintiff as "overly dramatic." (Tr. at 299.) The doctor noted, "At one point the patient put his feet up on my desk to 'relieve the pressure' on his back, seemingly without strain, effort, or pain." *Id.* Dr. Ray concluded, "Patient's reliability is questionable," wondering in his report, "What does this patient have to be defensive about?" (Tr. at 299-300.) The ALJ also noted that in his 2006 evaluation of Plaintiff, Dr. Varley wrote that Plaintiff's claims that treatment gave him no relief were "difficult to understand" and that there was "some incongruity between the patients subjective pain complaints and the objective findings." (Tr. at 302, 304.) Dr. Varley concluded that Plaintiff "appeared to be exaggerating the symptoms," stating, "It was apparent to me that there was another agenda for Mr. Bonds, and that it would be highly unlikely that interventional procedures would be of any benefit."[2] (Tr. at 304.) Finally, the ALJ pointed

---

[2] Dr. Varley even recorded a "nonverbal communication between the patient and his father" which caused the doctor to remove Plantiff's father from the room. (Tr. at 304.)

to a July 2006 evaluation by Dr. Brobst. Dr. Brobst noted that x-rays of Plaintiff's lumbar spine showed no abnormalities and that with the exception of a mild disc bulge at L5-S1, the rest of Plaintiff's disc spaces were "completely normal." (Tr. at 306.) Dr. Brobst calculated that Plaintiff had a "5% whole person impairment." (Tr. at 307.) He also noted that Plaintiff was tested for the presence of Waddell's Signs. He said, "A finding of three or more types out of five is considered clinically significant for symptom magnification. In this case, three of the types are positive; therefore, there is indication of symptom magnification due to the Waddell's Signs." (Tr. at 315.)

    It is evident that, in finding Plaintiff was not credible, the ALJ considered a wide swath of medical evidence. In doing so, he articulated in great detail why he did not credit Plaintiff's subjective expressions of pain. Given Plaintiff's lack of credibility and that the medical evidence does not confirm an injury whose severity would be expected to cause the level of pain alleged by Plaintiff, the Court will not disturb the ALJ's credibility finding.

> D. ALJ's Determination that Plaintiff Does Not Meet Listing 1.04A — Disorders of the Spine or Listing 12.04 — Depression.

Plaintiff asserts that the ALJ abused his discretion by finding that Plaintiff's impairments did not meet or equal one of the listings in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. Specifically, Plaintiff points to Listing 1.04A for Disorders of the Spine and Listing 12.04 for Depression. (Doc. 7-2 at 14.) A plaintiff is disabled if his impairments meet or equal an impairment in the Listings of Impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). The plaintiff has a heavy burden in meeting a listing, as "the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). To meet a listing, the plaintiff must "have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)-(d)). "To equal a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" *Wilson*, 284 F.3d at 1224 (quoting 20 C.F.R. § 404.1526(a)).

Furthermore, "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria . . . [because] [a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir.1987) (claimant must "present specific medical findings that meet various tests" to meet a Listing).  Finally, the Court has an "absolute duty" to consider a combination of impairments in order to determine whether there is medical equivalency to a Listing if the listing is defined in terms of functional criteria.  *Davis v. Shalala*, 985 F.2d 528, 533-34 (11th Cir.1993).

Listing  20 C.F.R. pt. 404,  subpt. P, app.  1, §1.04A  provides for disability as a result of the disorder of the spine resulting in a compromise of a nerve root or spinal cord with evidence of nerve root compression causing pain, limitation of motion, or motor loss accompanied by sensory or reflex loss and, if the lower back is involved, positive straight-leg raising test.

As noted above, the ALJ adequately addressed the medical evidence in the record supporting his finding that Plaintiff's impairment did not meet

Listing 1.04A.  MRI's performed in 2004, 2005, and 2006 all indicated no evidence of herniation, nerve root compression, spinal stentosis, or other significant pathology.  (Tr. at 116, 129, 130, 146, 162, & 363.)  In addition to the reports of treating physicians listed above, Dr. White, in a September 2004 exam, found no overt sensory or motor deficits and a negative straight leg raising test.  (Tr. at 123.)  Dr. Jones, in December 2004, found a negative straight leg raising test and 5/5 motor strength in legs.  (Tr. at 148.)  It is evident that Plaintiff has failed to meet the burden of providing medical evidence to show that his impairments met or equaled subsection A of Listing 1.04.

Turning to Plaintiff's claim that his mental impairments meet Listing 12.04, Plaintiff also fails to provide sufficient evidence to set aside the ALJ's finding.  Listing 12.04 requires a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome."  20 C.F.R. pt. 404, subpt. P, app. 1, §12.04.  Plaintiff points to the report of Dr. Blotcky to support his claim that he suffers from depression.  Dr. Blotcky's report does indicate that Plaintiff has a depressive disorder, and the findings of the ALJ recognize this fact.  (Tr. at 175; 36.)  It is not sufficient to meet the listing,

however, to show a diagnosis of depression.  Plaintiff must also show that such depression is continuous or intermittent and characterized by a number of symptoms.  20 C.F.R. pt. 404, subpt. P, app. 1, §12.04.  The record does not support a finding of mental impairment; instead, Plaintiff relies primarily on his own testimony to support his claim of disability.  (Doc. 7-3 at 8-10.)  As noted above, however, the ALJ properly determined that Plaintiff is not fully credible.  Therefore, the ALJ did not act inappropriately in denying Plaintiff's disability claim under Listing 12.04

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Bonds's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>23rd</u> day of <u>March 2010</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
153671